IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DONALD R.,

                Plaintiff,

      v.                                Civil Action No.
                                            3:22-CV-0161 (DEP)


KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                Defendant.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM    PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.       GEOFFREY PETERS, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER[1]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the

relevant times and, accordingly, is ineligible for the disability insurance

("DIB") and supplemental security income ("SSI") benefits for which he has

applied.  For the reasons set forth below, I conclude that the

Commissioner's determination did not result from the application of proper

legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in June of 1979, and is currently forty-four years of

age.  He was thirty-nine years old on both February 1, 2019, the date he

allegedly became disabled, and May 16, 2019, the date upon which he filed

his application for benefits.  Plaintiff stands five feet and eleven inches in

height, and weighed between approximately one hundred and ninety and

two hundred and four pounds during the relevant time period.  Plaintiff

reported at the administrative hearing that he lives in Port Crane, New

York, and other evidence in the record shows that he was temporarily living

---

[1]     This matter is before me based upon consent of the parties, pursuant to 28
U.S.C. § 636(c).

alternatively with both his father and friends during various portions of 2020.

In terms of education, plaintiff reports that he did not graduate from high school but did obtain his GED, and that, while in school, he was placed in special education classes.  Plaintiff has worked in the past primarily in various driving occupations, including as a driver of trucks and as a heavy machinery operator.  He also reports having worked in electronics assembly and retail auto parts sales.

Physically, plaintiff alleges that he suffers from hypersomnia and fatigue during the day, the effects of uncontrolled type 1 diabetes, and depression stemming from being unable to work as a truck driver due to his diabetes.  Plaintiff has treated for these impairments with sleep specialist Dr. Maciej Nowakowski, Nurse Practitioner ("NP") Victoria Engler and other sources at United Health Services ("UHS") located in Binghamton, New York, and sources at the Bassett Healthcare Network, centered in Cooperstown, New York.

Plaintiff alleged at the administrative hearing that his diabetes is the biggest barrier to his being able to work because his blood glucose levels are uncontrolled and highly variable despite treatment.  He testified that high blood glucose levels cause him to need to use the bathroom

frequently and make him defensive and argumentative with other people, whereas low levels cause lightheadedness, slurred speech, and loss of motor coordination.  Plaintiff stated that his insulin does not act in the same way every time he uses it, and as such it is difficult to control his levels on a day-to-day basis.  He has been approved for an insulin pump to address these issues, but he has not yet received it.

Plaintiff also reported experiencing excessive fatigue and tiredness during the day, stating that he will quickly get tired and doze off within minutes of sitting down unless he is actively engaged in an activity.  He stated that he is prescribed Adderall for fatigue, although it does not prevent him from falling asleep during the day.  He testified that, once he falls asleep, he will sleep for a few hours unless someone wakes him up.  Plaintiff reported that he does sleep during the night but wakes up every few hours because of his diabetes and needing to use the bathroom.  Plaintiff also stated that he experiences symptoms of depression related to no longer being able to drive commercially for work.  He has been trying to get into counseling to address his depression, but there have been long wait times to see a counselor due to the COVID pandemic.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

4

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on May 16, 2019.  In support of his application, he claimed to be disabled due to depression, type I diabetes, mood swings, and narcolepsy.[2]

A hearing was conducted on December 15, 2020, by Administrative Law Judge ("ALJ") Bruce S. Fein to address plaintiff's applications for benefits.  ALJ Fein issued an unfavorable decision on January 6, 2021, finding that plaintiff was not disabled at the relevant times, and is therefore ineligible for the benefits he seeks.  On January 7, 2022, the Social Security Appeals Council ("Appeals Council") denied review of that decision, making the ALJ's decision a final determination of the Commissioner.

B.    The ALJ's Decision

In his decision, ALJ Fein applied the familiar, five-step sequential test for determining disability.  At step one, he found that plaintiff had engaged in work that qualifies as substantial gainful activity from February 13, 2019, through May 18, 2019, but that there were other periods in which plaintiff

---

[2]      As was noted in the Administrative Law Judge's decision, plaintiff has also advanced mood swings, attention deficit hyperactivity disorder ("ADHD"), possible asthma, and possible chronic obstructive pulmonary disorder ("COPD") in support of his disability claim.  See Administrative Transcript at 18.

either was not working or was engaged in what the ALJ deemed to be unsuccessful work attempts.  Proceeding to step two, ALJ Fein concluded that plaintiff suffers from severe impairments that impose more than minimal limitations on his ability to perform basic work functions, including diabetes with hyperglycemia, depression, and hypersomnia.  He further found, however, that plaintiff's alleged hypertension, obstructive sleep apnea, tobacco abuse, bicuspid aortic valve, hyperlipidemia, ADHD, asthma, and COPD do not constitute severe impairments under the criteria of the regulations.

At step three, ALJ Fein examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 9.00 and 12.04.

ALJ Fein next surveyed the available record evidence and concluded that, during the relevant time period, plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following additional physical and mental limitations:

> no climbing ropes, ladders, or scaffolds; avoid concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery; work limited to simple,

6

routine, and repetitive tasks; work with no production rate or pace work; work in a low stress job, defined as only occasional decision-making, changes in work setting, judgment required on the job; and occasional interaction with co-workers, supervisors, and the public.

ALJ Fein found at step four that plaintiff is unable to perform his past relevant work.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert ("VE") regarding how plaintiff's limitations would impact his ability to perform other available work in the national economy and concluded, in light of the VE's testimony, that plaintiff remains able to perform such work, citing as representative positions those of laundry sorter, garment folder, and price marker.  Based upon these findings, ALJ Fein concluded that plaintiff was not disabled during the relevant period.

C.   This Action

Plaintiff commenced this action on February 18, 2022.[3]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ primarily failed to account for the effects of his narcolepsy/hypersomnia, in that he (1) failed to include supported limitations related to his ability to remain on task and maintain attendance, (2) improperly relied on

---

[3]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

assessments made by mental health sources because hypersomnia is a

neurological impairment rather than a mental impairment, and (3)

improperly relied on assessments by the consultative examiners and

nonexamining state agency medical consultants because, in their opinions,

those sources did not adequately consider the relevant impairments.  Dkt.

No. 13.  As relief, plaintiff seeks a remand with a directed finding of

disability, or, in the alternative, for further proceedings.

Oral argument was conducted in this matter, by telephone, on June

29, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is subject to a "very deferential" standard of review, and is

limited to analyzing whether the correct legal standards were applied, and

whether the decision is supported by substantial evidence.  *Brault v. Soc.*

*Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*,

312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d

Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there

is reasonable doubt as to whether the ALJ applied the proper legal

standards, the decision should not be affirmed even though the ultimate

conclusion reached is arguably supported by substantial evidence.
*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the
correct legal standards have been applied, and the ALJ's findings are
supported by substantial evidence, those findings are conclusive, and the
decision will withstand judicial scrutiny regardless of whether the reviewing
court might have reached a contrary result if acting as the trier of fact.
*Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.
1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting
*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.
Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must
be "more than a mere scintilla" of evidence scattered throughout the
administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation
marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal
whether an ALJ's findings are supported by substantial evidence, a
reviewing court considers the whole record, examining evidence from both
sides, because an analysis on the substantiality of the evidence must also
include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

　　　　If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

　　　　The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's argument in support of his challenge to the Commissioner's

determination is centered upon his claim that the ALJ failed to appropriately

consider and account for limitations related to his reported fatigue.  Dkt. No.

13, at 7-16.  Because I find that the ALJ's decision is insufficient to allow for

meaningful review of whether his pertinent findings are supported by

substantial evidence, remand for further proceedings is warranted on that

basis as will be discussed more fully below.

It is clear that the ALJ considered the medical evidence related to

plaintiff's reported fatigue, irrespective of whether such fatigue was related

to his diabetes or a hypersomnolence condition.  The factors considered

included plaintiff's reports that he feels tired during the day and "doz[es] off

frequently," and that Adderall was not relieving his fatigue during the day.

Administrative Transcript ("AT") at 22-24.[4]  The ALJ also acknowledged

that Dr. Nowakowski, who treated plaintiff's sleep and fatigue issues, was

not certain whether plaintiff had narcolepsy or whether his

hypersomnolence was a result of his poorly controlled diabetes.  AT 23-24.

However, despite having clearly assessed much of the evidence related to

plaintiff's fatigue, the ALJ failed to provide an adequate explanation

regarding his conclusions drawn from that evidence, leaving me unable to

determine whether those conclusions are supported by substantial

evidence.

Notably, as both parties here appear to acknowledge, the effects of

plaintiff's hypersomnolence and fatigue are largely established solely by

plaintiff's subjective reports of excessive sleepiness and falling asleep.  The

ALJ professed to have considered the plaintiff's subjective reports,

including those related to fatigue, in accordance with Social Security Ruling

("SSR") 16-3p, but emphasized that statements concerning symptoms

alone are insufficient to establish that a claimant is disabled, and further

stated that he "accounted [for] any functional deficits of the claimant by

limiting him to simple tasks performed in a low-stress and low-contact

---

[4]      The administrative transcript is found at Dkt. No. 12, and will be referred to
throughout this decision as "AT __."

environment, with some postural and environmental restrictions."  AT 25.  It is therefore clear that the ALJ found that the evidence of plaintiff's fatigue did not warrant any greater restrictions than accounted for in the RFC finding.

What is less clear is how the ALJ arrived at that conclusion.  SSR 16-3p requires an ALJ to consider specific factors when determining whether or not a claimant's subjective reports are or are not consistent with the other available evidence.  *See* SSR 16-3p (indicating that the relevant factors to consider when evaluating the intensity, persistence, and limiting effects of an individual's symptoms include daily activities, the nature of the symptoms, the factors that precipitate or aggravate the symptoms, the type, dosage, effectiveness and side effects of any medications or other treatments, other measures used to relieve symptoms, and any other factors concerning the individual's functional limitations and restrictions); *see also Edward J. v. Kijakazi*, 21-CV-0150, 2022 WL 4536257, at *6 (N.D.N.Y. Sept. 28, 2022) (Stewart, M.J.) (noting that, "[i]f the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider other evidence" and assess the relevant factors).  Although claiming to have considered those factors, the ALJ did not document that analysis in any respect within his decision.  Importantly, although the ALJ

14

discussed the medical evidence and subjective reports related to plaintiff's fatigue, there is no explanation as to how the evidence discussed supports the ALJ's conclusions, and any such logical connection is not inherently apparent.  The ALJ has not complied with the requirement to assess plaintiff's subjective reports pursuant to the applicable regulations.

The ALJ does point to the overwhelmingly normal mental status examinations as evidence to support his conclusion that, despite fatigue, plaintiff does not experience significant restrictions on his ability to concentrate and remain on task in particular.  While it is true that plaintiff ordinarily did not display deficits in concentration or attention on examinations, with the exception of the examination conducted by consultative examiner Dr. Amanda Slowik, it is not clear that the ALJ adequately considered all of the relevant evidence prior to drawing such conclusion from that evidence.  Specifically, at the administrative hearing, plaintiff testified that he falls asleep if he sits down for too long, elaborating that "I can't sit and be calm, because as soon as I sit and be calm, I'm getting tired and starting to doze off," noting that, at a previous job, "every 10, 15 minutes, I was dozing off if our work was slow.  Now, it's just whenever I sit and relax.  As soon as I relax, I fall asleep."  AT 54.  This testimony makes clear that plaintiff's concentration and focus were not

always affected by his fatigue, and that instead he would fall asleep if he was in a position where he was seated and not consistently required to be engaged in a task.  The ALJ did not address how such clarifying testimony would impact his interpretation of the mental status examination evidence.  Certainly, there is nothing inherently inconsistent between plaintiff's testimony and findings of normal attention and concentration based upon short examinations, as an examination would have likely been a situation in which plaintiff was mentally engaged.  While the ALJ is not required to credit plaintiff's subjective reports where they are inconsistent with the evidence, the ALJ did not explain how the normal mental status examination findings are actually inconsistent with plaintiff's reports of symptoms.  The ALJ's reliance on the normal examination findings therefore fails to provide an explanation for his relevant findings.[5]  Further, although the ALJ is correct that subjective reports are not generally sufficient to establish disability, SSR 16-3p cautions that the agency

> will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.  A report of minimal or negative findings or

---

[5]      I also note that, even while engaged in an examination, plaintiff was observed by Dr. Slowik to display mildly impaired concentration and attention during the consultative examination in January 2020.  AT 502.

> inconsistencies in the objective medical evidence is
> one of the many factors we must consider in
> evaluating the intensity, persistence, and limiting
> effects of an individual's symptoms.

SSR 16-3p.  The ALJ's reliance specifically on the lack of supportive

objective findings without consideration of the broader range of relevant

factors is therefore error, and it is not clear from his decision whether he

appropriately considered all of the relevant evidence or whether his

conclusions are supported by substantial evidence.

In this instance, the ALJ's error is not harmless.  The provider who

treated plaintiff specifically for his hypersomnolence condition, Dr.

Nowakowski, offered an opinion on November 12, 2020, which the ALJ

found to be "less persuasive."  AT 27-28.  To support that finding, the ALJ

cited the fact that Dr. Nowakowski never conducted specific testing related

to plaintiff's attention and concentration, and that mental status

examinations, both those performed by Dr. Nowakowski and others, have

been unremarkable.  AT 27.  However, as has already been discussed, the

ALJ has not explained how the ability to focus during a short-term and

discrete appointment with a physician is comparable with an ability to

maintain focus over a workday, particularly in light of plaintiff's testimony

that he quickly becomes tired and falls asleep during periods where he is

seated and not very engaged.  It is therefore not clear that this is a

supported reason for rejecting Dr. Nowakowski's opined limitations related to attention and concentration.

The ALJ further concluded that Dr. Nowakowki's opinion, as well as that of NP Engler, regarding the number of days plaintiff would be expected to be absent in a month are purely conjectural and not based on any documented observations or evaluations, and additionally determined that there is nothing to suggest that Dr. Nowakowski's indication that plaintiff would need to rest at work could not be accommodated by normal breaks during the workday.  AT 27-28.  As to the first point, I find this rationale to be insufficient based on the ALJ's failure to appropriately consider all of the evidence, as was already discussed.  Specifically, although plaintiff's mental status examinations did not generally reveal abnormal attention or concentration or document his falling asleep during examinations, it cannot be ignored that Dr. Nowakowski's treatment notes, as well as those from NP Engler, consistently indicate reports of ongoing fatigue and hypersomnolence, and those providers continued to treat plaintiff for such issues, including proscribing him various medications with mixed efficacy. Further, one sleep study performed in May 2019 showed that plaintiff fell asleep within seven minutes of the study's commencement, although a subsequent study in January 2020 revealed that it took thirty-three minutes

for him to fall asleep.[6]  AT 385, 610.  The ALJ acknowledged these sleep

studies and noted that the January 2020 study in particular showed

evidence of hypersomnia, but did not explain how those studies undermine

plaintiff's subjective reports of fatigue and hypersomnolence during the day.

As to the ALJ's second point, I find that his inference that plaintiff's possibly

falling asleep at work could be accommodated within normal breaks to be

completely unsupported.  The ALJ does not explain how this conclusion is

warranted despite plaintiff's testimony that he has little control over when

he falls asleep and that he can sleep for multiple hours unless awoken.

Lastly, in support of his findings, the ALJ pointed to the fact Dr.

Nowakowski's opinion is inconsistent with the opinions from the state

agency psychological consultants, Dr. Slowik, and NP Engler.  AT 28.

However, I agree with plaintiff that inconsistency with these other opinions,

standing alone, is insufficient to support the ALJ's findings regarding Dr.

Nowakowski's opinion with substantial evidence, especially in light of his

apparent failure to appropriately consider the extent to which plaintiff's

subjective reports of fatigue are consistent with the broader evidence in the

---

[6]      In a treatment note from March of 2020, Dr. Nowakowski wrote that the January
sleep study showed an average sleep latency of "3:30 minutes."  AT 595.  Given the
content of the sleep study, which was conducted by Dr. Nowakowski, this appears to be
a typographical error.

record.  The two sources who had the most knowledge regarding plaintiff's hypersomnolence – Dr. Nowakowski and NP Engler – both opined a degree of absenteeism at the border of or above what would be tolerated by employers.  AT 66 (indicating that employer tolerance of absenteeism is up to two full eight-hour shifts per month).  I further note that, although NP Engler did not opine that plaintiff would be off-task as a result of fatigue, such finding was based on her concurrent opinion that plaintiff's conditions would not cause fatigue, a finding that requires greater scrutiny given that NP Engler's own treatment notes documenting repeated complaints of daytime fatigue and difficulty with sleep are arguably facially inconsistent with that opinion.  Yet, the ALJ failed to explain why he nonetheless found that portion of her opinion to be persuasive.  AT 656.  I also note that NP Engler's opinion is ostensibly based on the effects of plaintiff's depression, and it is therefore not clear that her opinion extends to the fatigue experienced as a result of plaintiff's other conditions.  AT 655.  The ALJ simply has not explained how NP Engler's opinion appropriately informed his assessment of fatigue in the context of the effects of plaintiff's diabetes and/or hypersomnolence impairments.

Moreover, the fact that the ALJ relied on the opinions of Dr. Slowik, Dr. Juriga, and Dr. D'Ortona is insufficient to render the failure to

appropriately assess the evidence harmless.  As to the state agency

sources, those addressing plaintiff's physical limitations concluded that

plaintiff's hypersomnolence was not a severe impairment, and, although the

sources indicated that they considered symptoms of fatigue, they found

those reports to be generally not consistent with the evidence and there is

no indication they specifically assessed those symptoms in the framework

of his diabetes and/or hypersomnolence condition.  AT 75, 77.  As to the

opinions of Dr. Slowik, and to the extent applicable Dr. Jenouri, it is not

clear that the ALJ's assessment of those opinions would remain valid after

he conducts a more appropriate and comprehensive consideration of the

evidence pursuant to SSR 16-3p.  Because the ALJ's findings regarding

the persuasiveness of the other evidence may be impacted by the errors

here, those errors cannot be overlooked and considered to be harmless.

*See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (noting that, under

the applicable legal standard, an error is considered harmless where

application of the correct legal standard could lead only to the same

conclusion); *accord Scott A. C. v. Comm'r of Soc. Sec.*, 20-CV-1530, 2022

WL 3141707, at *5 (N.D.N.Y. May 3, 2022) (Peebles, M.J.).

For all of the above reasons, I find that the ALJ committed legal error

that prevents meaningful review of his findings.  I therefore find that remand

of this matter for further proceedings is warranted.  However, because

there are questions that remain to be resolved on remand, and based upon

my finding that persuasive evidence of disability is lacking, I do not find that

remand solely for the calculation of benefits is warranted in this matter.

IV.     SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the

plaintiff in support of her challenge to the Commissioner's determination, I

find that the determination did not result from the application of proper legal

principles and is not supported by substantial evidence.  Accordingly, it is

hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt.

No. 13) is GRANTED, defendant's motion for judgment on the pleadings

(Dkt. No. 17) is DENIED, the Commissioner's decision is VACATED, and

this matter is remanded for further proceedings consistent with this decision

and order, without a directed finding of disability, pursuant to sentence four

of 42 U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      July 6, 2023
            Syracuse, NY                    _____
                                            DAVID E. PEEBLES
                                            U.S. Magistrate Judge